934 P.2d 1179 (1997)
131 Wash.2d 706
Michael HAYES, Respondent,
v.
CITY OF SEATTLE, Petitioner.
No. 62820-3.
Supreme Court of Washington, En Banc.
Argued October 26, 1995.
Decided April 17, 1997.
*1180 Robin L. Rivett, Pacific Legal Foundation, Sacramento, CA, Groen & Stephens, John M. Groen, Bellevue, for Amicus Curiae on Behalf of Pacific Legal Foundation.
Mark Sidran, Seattle City Atty., Robert D. Tobin, Asst., Seattle, for Petitioner.
Richard B. Sanders, Bellevue, for Respondent.
ALEXANDER, Justice.
The City of Seattle obtained review of a decision of the Court of Appeals affirming the Superior Court's grant of a summary judgment in favor of Michael Hayes and against Seattle. We affirm the Court of Appeals, albeit for reasons that differ from those given by that court, concluding that the Superior Court correctly determined that Hayes should be awarded damages pursuant to RCW 64.40 for arbitrary and capricious action of the Seattle City Council.
In November 1987, Michael Hayes applied to Seattle's Department of Construction and Land Use (DCLU) for a master use permit in order to allow Hayes to remove an existing single family residence from a lot that he owned and to replace it with a three story, mixed use apartment building. Hayes indicated in his permit application that he intended to construct a building on his lot that would be 80-feet long and 40-feet wide. The lot, which was zoned "Neighborhood Commercial," was contiguous to land that was zoned for single family residences. On July 10, 1989, the DCLU approved Hayes's application for a master use permit.
A homeowner who lived near the subject property appealed the DCLU's decision. A hearing examiner for Seattle affirmed the DCLU. The neighboring homeowner then appealed the examiner's decision to the Seattle City Council. On December 18, 1989, the Council adopted all of the hearing examiner's findings, except for the finding that the height, bulk and scale of Hayes's building would produce "no materially adverse edge impact." Clerk's Papers at 398, 347. It approved issuance of the permit, subject, however, to the condition that the proposed building be no more than 65-feet in length. The Council did not explain why it added the restriction on length, other than to indicate that "[p]ermitting a building 80' in length and 40' in width will clearly leave bulk and scale impacts insufficiently mitigated."[1] Clerk's Papers at 92.
Hayes timely filed a "complaint" in King County Superior Court for judicial review of the Council's action. In this action,[2] he *1181 sought to overturn the decision of the Council and reinstate the hearing examiner's decision, contending that the Council had acted arbitrarily and capriciously when it conditioned approval of his application for the master use permit on a reduction in size of the proposed building. Upon review, the Superior Court ruled that the findings of the Council were "conclusory" and remanded the matter to the Council with instructions to "identify, if any, the specific adverse impacts of the bulk of this project, and to further identify the manner in which the proposed condition would mitigate any such identified adverse impacts." Clerk's Papers at 101-02.
On November 26, 1990, slightly more than three years after Hayes initially applied to Seattle for the master use permit, the Seattle City Council reconsidered its earlier decision. Without explanation, it affirmed the DCLU's approval of Hayes's request for a permit, thereby allowing him to construct a building on his property that was 80-feet long and 40-feet wide.
Thirty days after the Council rendered its decision, Hayes commenced the action in King County Superior Court that led to this appeal. He claimed in this second action that he was entitled to damages, costs and attorney fees, pursuant to the provisions of RCW 64.40.020,[3] asserting that the Seattle City Council had "arbitrarily, capriciously and/or unlawfully conditioned" approval of his master use permit on a reduction in the size of the proposed building. Clerk's Papers at 202. Hayes also sought damages under 42 U.S.C. § 1983 and attorney fees under § 1988, for what he claimed was the Seattle City Council's violation of his civil rights.
Hayes moved for summary judgment relying on RCW 64.40, as well as 42 U.S.C. §§ 1983 and 1988. The Superior Court, relying strictly on RCW 64.40, granted his motion and awarded him damages against Seattle in the amount of $18,609.33, together with $1,302.65 for prejudgment interest and a reasonable attorney fee of $24,048.82. The latter amount included $5,621.50 in expert witness fees.
The Court of Appeals, Division One, affirmed the trial court, despite holding that Hayes's claim for damages under RCW 64.40 was barred by the statute of limitations. It concluded, however, that Hayes was entitled to damages pursuant to 42 U.S.C. § 1983 and attorney fees under 42 U.S.C. § 1988. It also affirmed the award of reasonable attorney fees, but held that Hayes was not entitled to recover any amount for fees he had paid to expert witnesses.
In reviewing a decision of the Court of Appeals affirming an order of summary judgment, we engage in the same inquiry as the trial court. This requires us to consider the facts in the light most favorable to the nonmoving party. In re Estates of Hibbard, 118 Wash.2d 737, 744, 826 P.2d 690 (1992). Summary judgment should be granted only when it can be said there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. CR 56(c); Hibbard, 118 Wash.2d at 744, 826 P.2d 690.

I
We first address Seattle's contention that Hayes's action for damages, on either of the theories he presented to the trial court, is barred by the principle of res judicata. In that regard, Seattle contends, as it did at the trial court and at the Court of Appeals, that because Hayes's action for damages was not joined with his earlier filed action for judicial review that was based on the same transaction, Hayes should have been precluded from pursuing damages in the subsequent action.
The purpose of the doctrine of res judicata is to ensure the finality of judgments. Under this doctrine, a subsequent action is barred when it is identical with a *1182 previous action in four respects: (1) same subject matter; (2) same cause of action; (3) same persons and parties; and (4) same quality of the persons for or against whom the claim is made. Norco Constr., Inc. v. King County, 106 Wash.2d 290, 293, 721 P.2d 511 (1986). Factors three and four are met here because Hayes and Seattle are the only parties to both actions. Our focus, therefore, is on whether the subject matter of the suits is identical and whether the causes of action are the same.
We are satisfied that the two lawsuits with which we are here concerned do not involve the same subject matter simply because they both arise out of the same set of facts. Indeed, in Mellor v. Chamberlin, 100 Wash.2d 643, 673 P.2d 610 (1983), a case in which a single real estate transaction produced two lawsuits, we so held. In the first of those lawsuits, a buyer of land contended that the seller had misrepresented the extent of the property included in the sale. That lawsuit was settled and an order of dismissal with prejudice was thereafter entered. Shortly thereafter, the buyer brought a second lawsuit claiming that the seller breached a covenant of warranty. The buyer prevailed in that action on the theory that an adjoining landowner's encroachment onto the property breached the seller's warranty of quiet and peaceful possession. On appeal, the seller contended that the issue in the second lawsuit should have been raised in the first and, because it was not, the second lawsuit was barred by res judicata. In ruling against the sellers, we held that "[a]lthough both lawsuits arose out of the same transaction (sale of property), their subject matter differed" and the second suit was therefore not barred by res judicata. Mellor, 100 Wash.2d at 646, 673 P.2d 610.
While there is a dearth of case law defining when the subject matter of cases differs, one noted authority has observed that when courts examine subject matter "[t]he critical factors seem to be the nature of the claim or cause of action and the nature of the parties." Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH.L.REV. 805, 812-13 (1985). Examining the two actions that were brought by Hayes in that light, we are satisfied that they do not deal with the same subject matter. We reach that conclusion because the nature of the two claims is entirely disparate. The action for judicial review focused exclusively on the propriety of the decision making process of the Seattle City Council. On the other hand, the subsequent action was for a judgment for money to compensate Hayes for the damages he allegedly suffered as a result of the Council's action.
In deciding whether two causes of action are the same we are to consider the following four factors:
(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.
Rains v. State, 100 Wash.2d 660, 664, 674 P.2d 165 (1983) (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982)). After reviewing these factors, we are convinced that Hayes's action for judicial review and his subsequent action for damages are separate. In the action for judicial review, Hayes essentially sought to overturn a decision of the Seattle City Council. In order to succeed in that lawsuit, Hayes needed only to establish that the Seattle City Council's action met one of the five standards listed in the statutory writ of certiorari. RCW 7.16.120.[4] The evidence *1183 he needed to maintain that action is far different than the type of evidence that he needed to muster to establish that he was entitled to an award of damages. Indeed, we have previously held that writ actions cannot be used to decide damages issues and must be brought separately. Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 114, 829 P.2d 746 (1992), cert. denied, 506 U.S. 1079, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993). Finally, nothing in the subsequent action for damages destroyed or impaired any right established in the action for judicial review.
In concluding that Hayes's action for damages is not barred by res judicata, we are not saying that the two separate actions could not have been joined for trial. "Res judicata does not bar claims which arise out of a transaction separate and apart from the issue previously litigated." Schoeman v. New York Life Ins. Co., 106 Wash.2d 855, 860, 726 P.2d 1 (1986) (citing Seattle-First Nat'l Bank v. Kawachi, 91 Wash.2d 223, 226, 588 P.2d 725 (1978)).

II
Having concluded that Hayes's action for damages is separate from the action for judicial review, we must address the question of whether or not Hayes was, as the trial court found, entitled to a summary judgment on his claim insofar as it was based on RCW 64.40. Before reaching that issue, however, we must confront an issue that Hayes raised in his response to Seattle's petition for reviewwas the Court of Appeals correct in holding that Hayes's claim under RCW 64.40.020 was barred by the applicable statute of limitations, RCW 64.40.030?[5]
In concluding that Hayes's claim under RCW 64.40.020 was barred, the Court of Appeals relied on R/L Assocs., Inc. v. City of Seattle, 73 Wash.App. 390, 869 P.2d 1091, review denied, 125 Wash.2d 1006, 886 P.2d 1133 (1994), a case in which the facts are very similar to the instant facts. In that case, a developer, R/L Associates, applied to Seattle's DCLU for a zoning variance. The DCLU approved R/L Associates' request, but conditioned the grant of a variance on a reduction in the size of the proposed building. R/L Associates appealed that decision to a hearing examiner for the city who denied the request for a variance. R/L Associates sought judicial review of that decision in King County Superior Court. The Superior Court set aside the hearing examiner's denial of the variance, concluding that the examiner's decision was arbitrary, capricious or unlawful. Faced with that ruling, the City of Seattle then approved the variance. In a subsequent action in Superior Court for damages, based on RCW 64.40, R/L Associates prevailed against Seattle. The Court of Appeals reversed the damage award, however, holding that the statute of limitations had run on R/L Associates' cause of action for damages. In reaching that decision, it concluded that R/L Associates' action for damages was commenced more than 30 days after the date R/L Associates had exhausted its administrative remedies, to wit: more than 30 days after the hearing examiner denied R/L Associates' request for a variance.
Similarly, the Court of Appeals concluded here that Hayes had exhausted his administrative remedies when the Seattle City Council conditioned the grant of a master use permit on a reduction in the length of the proposed building. Consequently, it held that his damage action, which was commenced more than 30 days after that action by the council, was barred.
We disagree with that conclusion for two reasons. First, the exhaustion issue was rendered moot by Seattle's issuance of the master use permit. See R/L Assocs., Inc. v. City of Seattle, 61 Wash.App. 670, 676-77, 811 P.2d 971, review denied, 117 Wash.2d 1024, 820 P.2d 510 (1991). Secondly, we do not believe that Hayes had exhausted his administrative remedies when the Council conditionally approved his master use permit application. While the Council's action would have been final if Hayes had done nothing further, Hayes promptly commenced an action *1184 for judicial review specifically for the purpose of overturning what he claimed was arbitrary and capricious action by the Council. Hayes was, as we have observed, successful in that effort and following remand by the Superior Court to the City Council, he continued to seek the Council's approval of his application for a master use permit. Because Hayes continued to pursue his efforts to obtain a master use permit from the Seattle City Council, albeit with aid from the King County Superior Court, it cannot be said that he had exhausted his administrative remedies at the time of the council's initial action.
Underlying our decision is a recognition of the fact that the final action that an administrative body can take in this area is the issuance or denial of the sought after permit. Although we are not saying that an action in superior court for judicial review is an administrative remedy that must be exhausted prior to commencing an action to recover damages pursuant to RCW 64.40, under these facts, final action on Hayes's request for a permit did not occur until the City Council ultimately approved his application for a master use permit. Therefore, Hayes's action for damages, which was commenced within 30 days of that final action, was timely and is not barred by the statute of limitations.
If we adopted the position advanced by Seattle and approved the reasoning set forth in R/L Associates, persons in Hayes's position would, in order to avoid a potential bar of the statute of limitations, be forced to bring an action for damages before final action on their application had been taken by the administrative agency. That makes no sense because it would force applicants for permits to file an action for damages before their cause of action was ripe.

III
On the question of whether the trial court was correct in concluding that the Seattle City Council acted in an arbitrary and capricious manner, we are satisfied that it correctly decided that issue. Although the City Council had the authority under Seattle Municipal Code 25.05.675(G)(2)(b) and the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C.060, to impose conditions on the grant of a master use permit, that authority is subject to the qualification that "the agency must specifically describe the adverse environmental impacts, and either outline mitigation measures or specifically state why such measures are insufficient." Cougar Mountain Assocs. v. King County, 111 Wash.2d 742, 757, 765 P.2d 264 (1988). In Cougar Mountain, King County denied a developer's application for a subdivision, determining that the project would have significant adverse environmental impacts which could not be mitigated. The County, under the authority of SEPA, denied the application stating that the proposal would have significant impact on the environment. Upon review, we concluded that the County's determination was conclusory and did not indicate how the proposal conflicted with the policies of SEPA. Consequently, we reversed and remanded with instructions for King County to comply with the statutory requirements.
In our judgment, the Seattle City Council's findings here are similarly conclusory and the trial court was correct in so holding. Nothing in the Council's decision to condition the grant of a master use permit on a reduction in the length of the proposed building describes the adverse impact of Hayes's proposal or explains how reducing the size of the project would mitigate any such adverse impact. The decision simply reflects the Council's view that Hayes's project was too big, apparently on the theory that smaller is better.[6]
*1185 Such conclusory action taken without regard to the surrounding facts and circumstances is arbitrary and capricious, such action being defined as a "`willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Pub. Hosp. Dist. 6, 118 Wash.2d 1, 14, 820 P.2d 497 (1991) (quoting Abbenhaus v. City of Yakima, 89 Wash.2d 855, 858-59, 576 P.2d 888 (1978)).
For reasons stated above, we are satisfied that the trial court was correct in determining that Hayes was entitled to recover damages that he incurred as a result of the Council's decision.
Because we have determined that Hayes is entitled to recover damages pursuant to RCW 64.40, we need not address his claim that he is entitled to damages under 42 U.S.C. § 1983.[7]

IV
In answering Seattle's petition for review, Hayes has asked this court to review the Court of Appeals decision that the amount of fees Hayes paid to expert witnesses should be deducted from his award of attorney fees and costs. Costs have generally been narrowly defined and absent specific statutory authority, expert witness fees are not recoverable as costs. See Hume v. American Disposal Co., 124 Wash.2d 656, 674, 880 P.2d 988 (1994), cert. denied, 513 U.S. 1112, 115 S.Ct. 905, 130 L.Ed.2d 788 (1995). Although RCW 64.40.020 does provide for an award of reasonable attorney fees in addition to costs, it does not explicitly provide for recovery of expert witness fees and we are not inclined to place fees for experts under the umbrella of attorney fees.
Hayes asserts, alternatively, that he should be awarded expert fees pursuant to 42 U.S.C. § 1988(c). Although we are affirming the Court of Appeals on the basis of state law, Hayes is not entitled to recover expert witness fees under 42 U.S.C. § 1988(c). Although that statute does provide for the recovery of expert witness fees in certain instances (equal rights actions brought under 42 U.S.C. § 1981 or employment discrimination actions under 1981(a), nothing in § 1988(c) indicates that fees for expert witnesses are recoverable in actions brought under § 1983.
Affirmed.
DURHAM, C.J., and DOLLIVER, SMITH and JOHNSON, JJ., concur.
MADSEN, Justice, concurring in the dissent.
I agree with the dissent in its analysis of the limitations issue in this case. The majority contends that the 30-day time limit of RCW 64.40 did not begin to run until the City Council deleted its additional condition regarding the length of Hayes' proposed building and affirmed the decision of the hearing examiner. The majority states: "Because Hayes continued to pursue his efforts to obtain a master use permit from the Seattle City Council, albeit with aid from the King County Superior Court, it cannot be said that he had exhausted his administrative remedies at the time of the council's initial action." Majority at 1184.
As the dissent correctly points out, Hayes was able to receive aid from the King County Superior Court because he had already exhausted his administrative remedies. RCW 64.40.030 permits the filing of an action "only within thirty days after all administrative remedies have been exhausted." The majority's inclusion of the superior court as simply another level of the administrative review process is without precedent and throws the exhaustion doctrine into confusion.
*1186 Here the trial court issued a remand order instructing the City Council to clarify its decision. Quoting Cougar Mountain v. King County, 111 Wash.2d 742, 757, 765 P.2d 264 (1988), the court stated: "The agency must specifically describe the adverse environmental impacts, and either outline mitigation measures or specifically state why such measures are insufficient." The court went on to say that "the matter should be remanded to the City Council with instructions to identify, if any, the specific adverse impacts of the bulk of this project, and to further identify the manner in which the proposed conditions would mitigate any such identified adverse impacts." Clerk's Papers at 102.
Instead of clarifying its decision, the City Council deleted the additional condition and affirmed the decision of the hearing examiner. Had the Council complied with the remand order the trial court would then have reviewed the record and determined whether Hayes had carried his burden to show the Council's decision was arbitrary and capricious. Instead, because the Council chose to reverse its previous decision, the trial court was not required to decide whether Hayes had proven the Council's action to be arbitrary and capricious. Had the trial court found arbitrary and capricious action, Hayes would not have received damages under RCW 64.40 because he had not made such a claim. The majority uses the fact that the City Council reversed itself to give Hayes the damages which he could not have received had the trial court found arbitrary and capricious action.
Although I disagree with a great deal of what the dissent says regarding substantive due process, it correctly points out the confusion created by Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 829 P.2d 746 (1992), and Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 829 P.2d 765 (1992). In Lutheran Day Care, the trial court found that the County had acted arbitrarily and capriciously because its action was willful and unreasonable and in disregard of the facts. See Lutheran Day Care, 119 Wash.2d at 97, 829 P.2d 746. In discussing the section 1983 claim, the court stated:
[A] violation [of substantive due process] is made ... only if the decision to deny the permit is "invidious or irrational" or "arbitrary or capricious". In the present case, the trial court can be interpreted as denying appellant's due process claim based on the fact that the County did not act knowingly or recklessly in denying the permit. This is the wrong standard. The standard is arbitrary or capricious and as already discussed, Judge Kershner's finding in the certiorari action that the County acted arbitrarily and capriciously in denying the permit conclusively satisfies that standard. Appellant therefore has established as a matter of law and fact that the County violated substantive due process when it denied the conditional use permit.
Id. at 125, 829 P.2d 746 (citation omitted).
In seeming contradiction, in Sintra this court stated:
Relief is said to be available for § 1983 claims involving substantive due process only where there is a substantial infringement of state law prompted by animus directed at an individual or a group, or a "deliberate flouting of the law that trammels significant personal or property rights." Silverman v. Barry, 845 F.2d 1072, 1080 (D.C.Cir.), cert. denied, 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988).
Sintra, 119 Wash.2d at 23, 829 P.2d 765.
Recent criticism by the Court of Appeals that, read together, these two decisions create confusion, has some merit. See Hayes v. City of Seattle, 76 Wash.App. 877, 881 n. 5, 888 P.2d 1227 (1995) (citing Norquest/RCA-W Bitter Lk. Partnership v. Seattle, 72 Wash.App. 467, 483, 865 P.2d 18, review denied, 124 Wash.2d 1021, 881 P.2d 254 (1994)). It should be recognized, however, that the issues were different in Lutheran Day Care and Sintra. In Sintra, the plaintiff claimed that a Seattle housing ordinance violated substantive due process. The plaintiff also sought damages for a violation of substantive due process rights under 42 U.S.C. § 1983 based on the City's enforcement of the ordinance. In Lutheran Day Care, the plaintiff did not challenge the governing ordinance, but only the manner of its application to plaintiff's permit request. Thus, plaintiff's claim for damages did not arise from the invidious or irrational enforcement of an invalid ordinance, but from the manner of enforcement of a valid ordinance.
*1187 Another source of confusion is that this court's analysis in Sintra was guided by decisions which involved individual land use permit decisions, not the enactment and enforcement of ordinances which in themselves were found to violate substantive due process. See Harding v. County of Door, 870 F.2d 430 (7th Cir.1989); Bateson v. Geisse, 857 F.2d 1300 (9th Cir.1988); Silverman v. Barry, 845 F.2d 1072 (D.C.Cir.1988); Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461 (7th Cir.1988). Moreover, both Sintra and Lutheran Day Care relied on an earlier decision of this court, R.L. Assocs., Inc. v. City of Seattle, 113 Wash.2d 402, 780 P.2d 838 (1989). R.L. Associates in turn relied on federal decisions of the time which were applying differing standards. See, e.g., Silverman, 845 F.2d at 1080 (substantive due process only available where "substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights"); Coniston Corp. 844 F.2d 461 (invidious, irrational action on part of regulators sufficient to sustain substantive due process claim); Scott v. Greenville County, 716 F.2d 1409 (4th Cir.1983) (substantive due process claim proper where abuse of discretion or caprice is shown in decision to deny building permit); Southern Coop. Dev. Fund v. Driggers, 696 F.2d 1347 (11th Cir.) (imposition of requirement not included in ordinance upon an applicant for a permit violates substantive due process), cert. denied, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389, (1983); Rogin v. Bensalem Township, 616 F.2d 680 (3d Cir.1980) (substantive due process claim may be based on arbitrary or capricious permit denial), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); Littlefield v. City of Afton, 785 F.2d 596 (8th Cir.1986) (arbitrary, capricious denial of building permit may support substantive due process claim).
Setting aside the question of conflict or confusion, it must be remembered that an action under 42 U.S.C. § 1983 is provided for the vindication of violations of federal Constitutional rights. As such, this court should look to federal decisional law when interpreting that statute. A fair reading of federal decisions since Sintra and Lutheran Day Care indicates that the federal court approach toward substantive due process claims in the context of land use appeals is to require something more than a showing of arbitrary or irrational action in a challenge to an individual land use decision. See Armendariz v. Penman, 75 F.3d 1311 (9th Cir.1996) (revocation of property owner's business license and certificate of occupancy is type of government action regulated by Fourth and Fifth Amendments and thus precludes substantive due process claim); Zahra v. Town of Southold, 48 F.3d 674 (2nd Cir.1995) (using strict "entitlement" test to determine whether party's interest in performance of insulation inspection and revocation of building permit is protectable under substantive due process); Sylvia Development Corp. v. Calvert County, 48 F.3d 810, 827 (4th Cir. 1995) (in substantive due process violation claim for denial of special zoning designation plaintiff must show state action which is "`so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies'") (quoting Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991), cert. denied, 502 U.S. 1097, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992)); Hartland Sportsman's Club, Inc. v. Delafield, 35 F.3d 1198 (7th Cir.1994) (in challenge to restriction on conditional use permit plaintiff must show zoning decision was arbitrary and irrational, as well as separate constitutional violation or inadequacy of state law remedies); The Reserve, Ltd. v. Town of Longboat Key, 17 F.3d 1374 (11th Cir.1994) (in substantive due process claim based on revocation of permit plaintiff must show both a protectable property interest and that deprivation was for improper motive and by means that were pretextual, arbitrary and capricious and without any rational basis).
*1188 In this case, Hayes does not challenge the city ordinance reflecting the City's "edge policy" but argues the manner of its application to his permit request was arbitrary, capricious or contrary to law. As is clear from the federal decisions discussed above, in the case of a challenge to an individual land use decision something more than arbitrary or irrational action must be shown to succeed in a section 1983 claim for violation of substantive due process. Although perhaps not the model of clarity, the part of this court's analysis in Sintra requiring animus or a deliberate flouting of the law that trammels significant rights is in line with the approach of most recent federal decisions. Thus, until such time as the United States Supreme Court speaks to the contrary, Sintra, not Lutheran Day Care, should be followed by the courts of this state.
The Court of Appeals in this case felt constrained to apply Lutheran Day Care and granted summary judgment on Hayes' section 1983 claim. Its decision should be reversed and the matter remanded for further proceedings in accord with this court's decision in Sintra.
GUY, J., concurs.
TALMADGE, Justice, dissenting.
This is a straightforward land use case that offers us the opportunity to shed needed light on our murky law of compensation for land use regulation. Instead, the majority disregards 100 years of claim preclusion law in Washington and ignores crystal clear language in RCW 64.40.040 to avoid reaching the fundamental land use issues. By declining to address the Court of Appeals' analysis of substantive due process and 42 U.S.C. § 1983, the majority also leaves in place an erroneous analysis of the constitutional tort in land use cases, contributing to further confusion in an area of law already made nearly unintelligible by unwarranted judicial activism. For these reasons, I respectfully dissent.

ANALYSIS
A. Factual Issues
The majority accurately discusses the essential facts in this case, but omits several salient facts regarding the Seattle City Council's (City Council) decision that bear emphasis.
The root of this dispute, of course, is the City of Seattle's (City) initial failure to approve Hayes's Master Use Permit application containing the proposed 80-foot long building. The City would approve the permit only if Hayes would agree to make the building no longer than 65 feet. The City based this determination on its authority to mitigate "edge impacts."
Seattle Municipal Code (SMC) 25.05.675(G)(2)(a), based on the State Environmental Policy Act (SEPA), provides the bulk and scale of buildings proposed to be located next to less intense developments should be "reasonably compatible" with the height, bulk, and scale of buildings in that zone. This policy is known as the "edge" policy because it applies in areas that abut, or are on the edge of, a single family home.
Making a subjective decision about the size of a proposed project was precisely what the people of Seattle empowered their elected officials to do in this ordinance. The City could deny a permit or require mitigation if "[t]he project is located near the edge of a zone, and results in substantial problems of transition in scale or use which were not specifically addressed by the applicable City code or zoning." Seattle Municipal Code 25.05.665(D)(5). The ordinance describing "edge impacts" due to height, bulk, and scale reads, in pertinent part:
The City's adopted land use policies are intended to provide for smooth transition between industrial, commercial, and residential areas, to preserve the character of individual city neighborhoods and to reinforce natural topography.
....
It is the City's policy that the height, bulk and scale of development projects should be reasonably compatible with the general character of development anticipated by the adopted land use policies set forth in SMC Chapter 23.12 for the area in which they are located, and to provide for a reasonable transition between areas of less intensive zoning and more intensive zoning.
SMC 25.05.675(G)(1)(a) and (G)(2)(a) (emphasis added). Thus, the City's authority to regulate height, bulk, and scale derives from SEPA, and the ordinance confers substantial discretion on the City Council to mitigate the "edge impact" of Hayes's development. The *1189 City Council exercised this discretion by conditioning approval of Hayes's project on a reduction in the length of the proposed structure.
Both the Court of Appeals and the majority fault the City Council for failing to explain why it imposed the condition: "The Council's decision simply assumes smaller is preferable and relies on the obvious point that reducing the project by 15 feet will make it smaller." Hayes v. City of Seattle, No. 33342-9-I, slip op. at 10 (Wn. App. Feb. 13, 1995); "[t]he decision simply reflects the Council's view that Hayes's project was too big, apparently on the theory that smaller is better." Majority op. at 1184. The trial court also expressed its disagreement with the City Council's decision in similar terms: "There must be some further identification of why `big is bad' in this case." Clerk's Papers at 101. Yet such judicial "correction" of the City Council determination is improper. In subjectively assessing an "edge impact," as the Seattle SEPA-based ordinance required, the City Council was entirely within its discretion to decide "smaller is preferable" or "smaller is better" or "big is bad." While we may quarrel with such an assessment, this decision is not entrusted to the judiciary.
The majority holds the City Council decision to be arbitrary and capricious, "taken without regard to the surrounding facts and circumstances," majority op. at 1185, but the record does not support this view. We define arbitrary and capricious in the context of agency decisionmaking as follows: "Administrative action is arbitrary and capricious only when it is willful and unreasoning or taken without consideration and in disregard of the facts." State v. Wittenbarger, 124 Wash.2d 467, 486, 880 P.2d 517 (1994). "Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached." Cougar Mountain Assocs. v. King County, 111 Wash.2d 742, 750, 765 P.2d 264 (1988) (quoting Barrie v. Kitsap County, 93 Wash.2d 843, 850, 613 P.2d 1148 (1980)). "A judicial conclusion that the administrative decision was erroneous is not sufficient." State v. Ford, 110 Wash.2d 827, 830, 755 P.2d 806 (1988).
The trial court in the writ of review suit did not invalidate the City Council's decision under the Seattle "edge ordinance" as arbitrary and capricious. By letter opinion dated August 13, 1990, and subsequent order, the trial court simply remanded the matter to the City Council so it could more specifically identify the impacts of the building's bulk and scale, and describe how the additional condition (reducing the building's length by 15 feet) mitigated those impacts. On remand, the City Council reconsidered its decision and rescinded the condition. As a result, it did not set forth any facts in an attempt to support its original position.
Moreover, Hayes contends the City Council decision was without due consideration of the facts: "the City Council did not in fact review the record nor any portion of it.... The Council hearing took 5 or 10 minutes." Br. of Resp't at 5, 7. These assertions were perhaps influential in persuading the courts below and the majority here that the City gave Hayes short shrift. Councilmember Jim Street filed an affidavit in the trial court, however, substantially refuting Hayes's assertions:
I have reviewed the declarations of Richard Sanders and Michael Hayes in this case, in which they state that the Council did not review the record on appeal before making a decision on the appeal. This is totally false. I specifically reviewed documents submitted on the appeal, and discussed the record during Council meetings. I made a site visit to the property. The appeal was before the Council on at least four occasions in 1989 alone. The parties were permitted to present oral argument to my committee and did so. The Council's review of the record and consideration of the appeal was [sic ] no different from the numerous land use appeals which come before it. The transcript of those proceedings, partially submitted by the plaintiff for this motion, refutes his claim that the Council summarily decided the appeal. The Council fully and fairly considered the competing arguments of the parties before making its decision. Contrary to the plaintiff's statement, the Council's decision was anything but a sham.
Clerk's Papers at 112-13. The record before us reveals no motion to strike this affidavit or any portion of it in the trial court. "Failure to make such a motion waives deficiency in the affidavit if any exists." Lamon v. *1190 McDonnell Douglas Corp., 91 Wash.2d 345, 352, 588 P.2d 1346 (1979).[1]
Based on the record, therefore, I cannot conclude the City failed to give due consideration to this matter, and I am therefore less inclined than the majority to substitute my judgment for the judgment of the City Council on a matter it had sole responsibility to decide. I do not believe the City acted arbitrarily and capriciously with respect to Hayes's Master Use Permit application in light of the ample discretion conferred upon it under the ordinance.[2]
B. RCW 64.40
Hayes's claim under RCW 64.40 was barred under either principles of claim preclusion or the statute of limitations in RCW 64.40.040.
1. Claim Preclusion
The City correctly asserts Hayes's RCW 64.40 claim is barred by the doctrine of claim preclusion. Hayes should have joined his claim for damages with his writ action.
Washington law since territorial days has mandated the presentation of all related claims in a single action:
It is for the interest of the public that litigation shall not be had about one wrong by many actions. It is wrong for a plaintiff to split up a contract or wrong into many parts, and thus harass and put to costs a defendant, when the plaintiff can recover, if he chooses, all in one action. One action, judgment, and satisfaction for one wrong are all the law allows. *1191 Dawson v. Baum, 3 Wash. Terr. 464, 471, 19 P. 46 (1888). This proposition is entirely without controversy; we have stated it in different ways many times. See, e.g., Sanwick v. Puget Sound Title Ins. Co., 70 Wash.2d 438, 441, 423 P.2d 624, 38 A.L.R. 3rd 315 (1967); Witte v. Old Nat'l Bank of Spokane, 29 Wash.2d 704, 709, 189 P.2d 250 (1948); State ex rel. White Pine Sash Co. v. Superior Court, 145 Wash. 576, 579, 261 P. 110 (1927) (rule against splitting causes of action avoids "multiplicity of suits, and thus protects the defendant against unnecessary vexation, and avoids the costs and expenses incident to numerous actions"); Sprague v. Adams, 139 Wash. 510, 515, 247 P. 960, 47 A.L.R. 529 (1926). The rule applies
[N]ot only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.
Anderson v. National Bank, 146 Wash. 520, 528, 264 P. 8 (1928) (quoting Woodland v. First Nat'l Bank, 124 Wash. 360, 362, 214 P. 630 (1923)).
The Court of Appeals here held "[a]pplication for a writ of review and a claim for damages under RCW 64.40 should be brought as a single action. Even where the separate claims are disposed of sequentially, this approach makes clear to all parties what is at stake in the review process and efficiently disposes of all claims." Hayes, 76 Wash.App. at 879 n. 3, 888 P.2d 1227 (citation omitted).[3]
The majority agrees with Hayes and disagrees with the Court of Appeals, holding there is no identity of subject matter between the writ of review and RCW 64.40 action: "The action for judicial review focused exclusively on the propriety of the decision making process of the Seattle City Council. On the other hand, the subsequent [RCW 64.40] action was for a judgment for money to compensate Hayes for the damages he allegedly suffered as a result of the Council's action." Majority op. at 1182.
The majority cites Mellor v. Chamberlin, 100 Wash.2d 643, 673 P.2d 610 (1983), for the proposition "separate lawsuits that arise out of the same set of facts do not necessarily involve the same subject matter." Majority op. at 1182. The majority is wrong. Mellor specifically involves related, though entirely distinct, facts and causes of action. We said "[a]lthough both lawsuits arose out of the same transaction (sale of property), their subject matter differed. The first lawsuit disputed whether the Chamberlins misrepresented the parking lot as part of the sale. The second questioned whether Buckman's claim of encroachment breached the covenant of title. Moreover, the two causes of action were distinct." Mellor, 100 Wash.2d at 646, 673 P.2d 610.
Hayes does not dispute he could have filed his action for damages under RCW 64.40 at the time he filed the writ of review. Answer to Pet. for Review at 15-16. He simply chose not to do so because he now claims to believe the writ action and the damages claim were "distinct and disconnected causes of action." Id. at 16.
However, Hayes's own arguments on this question are contradictory. Hayes argued in the Court of Appeals the writ of review and his subsequent action for damages under RCW 64.40 were so similar he was entitled to summary judgment on the RCW 64.40 claim on the basis of collateral estoppel. Br. of Resp't at 17-18. Collateral estoppel would be appropriate, of course, only if there were identity of claims in the prior and subsequent actions. Hayes now takes precisely the opposite position. He argues the writ of review was "distinct and disconnected" from the RCW 64.40 action. The same two actions cannot simultaneously be "distinct and disconnected" and identical enough to establish collateral estoppel.
*1192 In fact, Hayes's claim for damages under RCW 64.40 arises out of the same bundle of facts constituting the basis for the writ of review. An examination of the respective allegations establishes the identity of those claims:
Writ of review allegation: Basis for Review: The decision of the Seattle City Council is arbitrary, capricious and/or contrary to law and is subject to direct review by this court.... Plaintiffs are entitled to recover their reasonable attorney fees pursuant to RCW 43.21C.075(9).
Clerk's Papers at 98.[4]
RCW 64.40 allegation: The City of Seattle acted arbitrarily, capriciously, unlawfully, and/or in excess of lawful authority when it denied and/or delayed the issuance of said permit and/or failed to act within time limits established by law.... Plaintiff is entitled to recover his damages as well as reasonable attorney fees pursuant to RCW 64.40.020.
Clerk's Papers at 5.
These allegations involve the same theory of liability: arbitrary and capricious action by the City; they differ only in the remedy sought. In the writ of review, Hayes prayed for an order allowing him to build an 80-foot long building. In the RCW 64.40 action, he prayed for damages stemming from the City's failure to allow him to build that 80foot building. In each case, adducing precisely the same facts, he alleged the City acted arbitrarily and capriciously, but he did not file the damage allegations until a year after he had filed the writ of review. Principles of claim preclusion required him to file the damage allegations during the pendency of the writ of review suit.
Further, our case law supports the view that the theories at issue here can be brought in a single action. In Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 97, 829 P.2d 746 (1992), cert. denied, 506 U.S. 1079, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993), the plaintiff filed an action for a writ of certiorari and damages under RCW 64.40 in the same lawsuit, and subsequently amended the lawsuit to include a claim under 42 U.S.C. § 1983, all without objection from the defendant or criticism by the Court. After Snohomish County had repeatedly refused to issue a conditional use permit to allow the plaintiff to build a rest home on its property, the plaintiff sought a writ of certiorari from the Snohomish County Superior Court ordering the county to issue the permit. The plaintiff also sought damages under RCW 64.40 as a remedy for the county's arbitrary and capricious conduct in refusing the permit. The superior court held the refusal of the county to issue the permit was arbitrary, capricious, and unlawful. Id. at 98, 829 P.2d 746. Based on that holding, the plaintiff moved for partial summary judgment of liability on the RCW 64.40 claim, arguing that because all it had to show to establish liability under RCW 64.40 was arbitrary and capricious behavior, the prior decision of the court in the writ of certiorari was "binding at this stage of the litigation under the doctrine of *1193 collateral estoppel." Id. at 112, 829 P.2d 746. We held collateral estoppel was applicable under the circumstances, because the trial court's finding of arbitrary and capricious conduct in the writ of certiorari suit "conclusively established" arbitrary and capricious conduct for purposes of RCW 64.40. Lutheran Day Care, 119 Wash.2d at 116-17, 829 P.2d 746.
If the majority is correct here that the "evidence [Hayes] needed to maintain [the writ of review] is far different than the type of evidence that he needs to muster to establish that he was entitled to an award of damages [under RCW 64.40]," majority op. at 1183, then the inescapable conclusion is this Court was wrong in Lutheran Day Care. In fact, this Court was right in Lutheran Day Care.
Finally, we have said the "doctrine of res judicata is based on public policy." Luisi Truck Lines, Inc. v. Washington Utilities & Transp. Comm'n, 72 Wash.2d 887, 896, 435 P.2d 654 (1967). Thus, a discussion of policy considerations is warranted and those considerations emphatically favor the City, not Hayes.
When the City Council reconsidered its condition reducing the length of Hayes's building by 15 feet in response to the remand from the superior court, the only lawsuit Hayes had then filed against the City was the writ of review suit. The writ statute contains no damages provision; nor does it contain an entitlement to attorney fees. The only claim for money damages appearing in the writ lawsuit is a claim under RCW 43.21C.075(9) (SEPA) that permits a court to award no more than one thousand dollars in reasonable attorney fees "if the court makes specific findings that the legal position of a party is frivolous and without reasonable basis." Id. Clerk's Papers at 98. Thus, on reconsideration in response to the remand from the superior court, the City Council may well have decided to eliminate the 15foot condition rather than face further litigation, and to absorb at most a $1,000 attorney fee award. The City Council may have simply decided to cut its losses at that point.
Had the damages claims under RCW 64.40 been pleaded at the time the City Council rescinded the 15-foot condition, therefore, the City Council might not have agreed to rescind in the absence of a settlement agreement with, and release of claims from, Hayes. Alternatively, if no satisfactory settlement with Hayes were possible, the City Council might have elected to hold its ground by making specific findings of fact in an attempt to satisfy the superior court that its conditioning of the Master Use Permit was proper under the City's SEPA ordinance. Such an approach would have given the City at least a fighting chance to avoid a determination its decision was arbitrary and capricious, and therefore subject to a damage award.
But Hayes did not file those damage claims until after the City Council's rescission of the 15-foot length reduction condition. Thus, the City Council had no reason to think it was exposed to damage claims when it responded to the superior court's order by rescinding the condition rather than attempting to cure the deficiency the superior court had found in the findings of fact. Allowing Hayes to pursue damage claims after the City had rescinded the condition is unfair.
In summary, the majority's argument that Hayes was not required to advance his damage claims in the writ of review suit because they were "distinct and disconnected" does not withstand scrutiny; the claims arise out of the same facts, as Hayes previously contended. As we held in Lutheran Day Care, those claims were identical enough to support the application of collateral estoppel. Finally, the facts of this case dictate the application of claim preclusion to avoid prejudice to the City. Rather than disregarding a fundamental principle of Washington law in place since territorial days, I would dismiss the RCW 64.40 action.
2. Statute of Limitations
RCW 64.40.030 sets the time limitation for filing a claim under the statute: "Any action to assert claims under the provisions of this chapter shall be commenced only within thirty days after all administrative remedies have been exhausted." The City Council imposed the 15-foot building length reduction on December 18, 1989. Hayes did not file his claim for damages under RCW 64.40 until December 26, 1990, more than a year later. The Court of Appeals agreed with the City this was too late, but the majority reverses. Majority op. at 1183-84.
*1194 The majority argues the City Council's final action in issuing the permit to Hayes with the undesirable condition did not, in fact, constitute the exhaustion of all administrative remedies. According to the majority, the final administrative action triggering the beginning of the time to file the RCW 64.40 case did not occur until after Hayes sought judicial review, obtained the remand order, and the City Council ultimately rescinded the challenged condition. Hayes "continued to pursue his effort to obtain a master use permit from the Seattle City Council, albeit with aid from the King County Superior Court." Majority op. at 1184. Under the majority's interpretation, seeking judicial review in superior court under RCW 7.16 is simply continued pursuit of an administrative remedy.
The majority offers no authority from any case or treatise for this proposition. Hayes invoked judicial review precisely because there were no more administrative avenues to pursue. Judicial review is ordinarily not available until all administrative remedies have been exhausted. See, e.g., State v. Grays Harbor County, 122 Wash.2d 244, 249, 857 P.2d 1039 (1993) (RCW 43.21C.075(4) requires exhaustion of administrative remedies before judicial review may be sought); Simpson Tacoma Kraft Co. v. Department of Ecology, 119 Wash.2d 640, 646, 835 P.2d 1030 (1992); Orion Corp. v. State, 103 Wash.2d 441, 456, 693 P.2d 1369 (1985) (strong bias toward requiring exhaustion before resort to the courts); Bowen v. Department of Social Security, 14 Wash.2d 148, 154, 127 P.2d 682 (1942).
RCW 64.40.040 limits the filing of an action to "only within thirty days after all administrative remedies have been exhausted." RCW 64.40.040. The majority errs in holding judicial review in this case was a continuation of the administrative decisionmaking process. Hayes's RCW 64.40 claim is barred by RCW 64.40.040, as the Court of Appeals correctly determined.
C. 42 U.S.C. § 1983 and Substantive Due Process
Having found for Hayes on the basis of RCW 64.40, the majority omits discussing the Court of Appeals' disposition of Hayes's allegation the City violated his substantive due process rights.[5] This omission is especially regrettable because it leaves as an open question a statement this Court made in Lutheran Day Care that has caused consternation and confusion in the lower courts. Further, the Court of Appeals' decision is also based on our decisions on 42 U.S.C. § 1983 that are manifestly in error, given recent federal court interpretation of that statute.
Hayes did not have a claim under 42 U.S.C. § 1983 for violation of his right to substantive due process. First, the City's conduct was not arbitrary and capricious under the statute. I do not believe every land use decision overturned by a superior court automatically translates into a federal constitutional tort. Second, the right Hayes seeks to vindicate is embodied in the Fifth Amendment and art. I, § 16 of the Washington Constitution, and the City did not deprive Hayes of any property right. Finally, this is a procedural, not substantive, due process case.
1. Arbitrary and Capricious Conduct
In Lutheran Day Care, we held the county's denial of a conditional use permit was a violation of substantive due process. We said "[s]uch a violation is made out ... only if the decision to deny the permit is `invidious or irrational' or `arbitrary or capricious'." *1195 Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 125, 829 P.2d 746 (1992) (citing R/L Assocs., Inc. v. City of Seattle, 113 Wash.2d 402, 412, 780 P.2d 838 (1989)), cert. denied, 506 U.S. 1079, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993). R/L Assocs. does not say that, however. R/L Assocs. says "a land use decision `denies substantive due process only if it is invidious or irrational.'" (Emphasis added.) R/L Assocs., 113 Wash.2d at 412, 780 P.2d 838 (quoting Harding v. County of Door, 870 F.2d 430, 431 (7th Cir.)), cert. denied, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). In Sintra v. City of Seattle, 119 Wash.2d 1, 23, 829 P.2d 765 (1992), published the same day as Lutheran Day Care, we said, "Arbitrary, irrational action on the part of regulators is sufficient to sustain a substantive due process claim under § 1983," citing Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 467 (7th Cir.1988), but also said there must be either animus or a "`deliberate flouting of the law that trammels significant personal or property rights,'" quoting Silverman v. Barry, 845 F.2d 1072, 1080 (D.C.Cir.), cert denied, 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988). In both R/L Assocs. and Sintra, we declared something more than mere arbitrary and capricious behavior is necessary to sustain a substantive due process claim.
In Lutheran Day Care, however, we said a violation of substantive due process can occur either from invidious or irrational action, or from arbitrary or capricious action. We held because the trial court had already found the county's actions in the writ proceeding arbitrary and capricious, the appellant "has established as a matter of law and fact that the County violated substantive due process when it denied the conditional use permit." Lutheran Day Care, 119 Wash.2d at 125, 829 P.2d 746.
This result has led lower courts to express "genuine confusion" as to the proper standard of review for a substantive due process violation. Norquest/RCA-W v. City of Seattle, 72 Wash.App. 467, 483, 865 P.2d 18, review denied, 124 Wash.2d 1021, 881 P.2d 254 (1994). The Court of Appeals in the present case observed "serious arguments" could be made that an arbitrary and capricious decision by an agency does not necessarily equate to a violation of substantive due process, but nevertheless felt "constrained" by Lutheran Day Care. Hayes, slip op. at 11 n. 8. The City devoted almost all of its supplemental brief to arguing the common law definition of arbitrary and capricious does not necessarily achieve the standard necessary for finding a due process violation. This case is an opportunity for the Court to clarify the standard of review for substantive due process claims, but, sadly, the majority has elected not to do so.
I agree with the position expressed at oral argument by amicus Pacific Legal Foundation that arbitrary and capricious conduct by an administrative agency does not ipso facto equate to a constitutional violation. As the Court of Appeals for the Fourth Circuit stated:
But to conclude that every agency decision reversed as "arbitrary and capricious" under state or federal administrative law rises to the level of a constitutional claim would distort the substantive due process doctrine. As the courts have consistently recognized, the inquiry into "arbitrariness" under the Due Process Clause is completely distinct from and far narrower than the inquiry into "arbitrariness" under state or federal administrative law. See Gardner, 969 F.2d at 71 n. 3; RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 914 n. 1 (2d Cir.), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); Pearson v. City of Grand Blanc, 961 F.2d 1211, 1221 (6th Cir.1992). While administrative law focuses on whether an agency's decision was supported by record evidence and abided by statutory criteria, substantive due process inquires into the conceivable outer limits of legitimate government power. *1196 Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 829 n. 7 (4th Cir.1995).
I do not believe the City's actions here violated Hayes's substantive due process right. As we indicated in Sintra, every successful administrative appeal in the land use context should not be equated with a federal constitutional tort. Some greater deprivation of Hayes's rights is required. This is particularly true here, where, as previously noted, the trial court in the writ of review suit did not even declare the City's conduct to be arbitrary and capricious.
2. More Specific Constitutional Rights Apply
"Section 1983 `is not itself a source of substantive rights,' but merely provides `a method for vindicating federal rights elsewhere conferred.' The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994), quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). "[I]n order to proceed in a § 1983 action, a plaintiff must show that some person deprived plaintiff of a federal constitutional or statutory right, and that person must have been acting under color of state law." Lutheran Day Care, 119 Wash.2d at 117, 829 P.2d 746. The challenged act must result in the "deprivation of a federally created right." Id. at 119, 829 P.2d 746.[6] The initial inquiry in the present case is whether Hayes has been deprived of some constitutionally protected property right. In re Cashaw, 123 Wash.2d 138, 143, 866 P.2d 8 (1994). The Court of Appeals did not address this question.
In Armendariz v. Penman, 75 F.3d 1311 (9th Cir.1996), the Court of Appeals for the Ninth Circuit in an en banc decision held substantive due process does not extend to areas addressed by more specific provisions of the Constitution. Armendariz followed the teachings of two United States Supreme Court cases: "Where a particular amendment `provides an explicit textual source of constitutional protection' against a particular sort of government behavior, `that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" Albright, 510 U.S. at 273, 114 S.Ct. at 813 (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). Armendariz, 75 F.3d at 1313.
I agree with the Armendariz analysis. Hayes's rights are based on the Fifth Amendment and art. I, § 16 of our Constitution. He must seek his remedy, if any, under those more specific provisions. In this instance, it is not clear Hayes had a property interest that could be protected under these more specific constitutional provisions.
Hayes alleged in his complaint the City deprived him "of his property interest in a land use permit." Clerk's Papers at 6. But it is doubtful Hayes had a property interest under state law in the Master Use Permit he applied for. If he had no property interest, then he has not stated a claim under § 1983 upon which relief can be granted. Marine One, Inc. v. Manatee County, 877 F.2d 892, 894 (11th Cir.1989) (whether state law creates a property right is a question of law).
This Court unanimously held in Erickson & Assocs., Inc. v. McLerran, 123 Wash.2d 864, 876, 872 P.2d 1090 (1994), that Washington's vested rights doctrine does not prevent a City from setting the time for vesting of a Master Use Permit as the date of approval, even though by statute and common law the right to a building permit vests at the date of application. RCW 19.27.095(1); State ex. rel. Ogden v. City of Bellevue, 45 Wash.2d 492, 495-96, 275 P.2d 899 (1954). An application for a Master Use Permit is therefore not a vested right pursuant to Erickson.
*1197 Nevertheless, even though an application for a Master Use Permit does not result in a vested right to its issuance, the Court must consider if the applicant has some state-created property right of another kind to the issuance of the Master Use Permit, the deprivation of which denies him due process of law. The attempt to identify such a right has been the subject of much discussion in the federal circuit courts of appeals.
Basing their approach on language from Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), numerous courts have found a constitutionally cognizable property right in a "legitimate claim of entitlement" to and a "justifiable expectation" of a desired land use action. When the agency must exercise its discretion, however, there is no "legitimate claim of entitlement" or "justifiable expectation." Silver v. Franklin Township, 966 F.2d 1031, 1036 (6th Cir.1992) (no property right in conditional zoning certificate because issuing agency had broad discretion). In Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54 (2d Cir.1985), even though the court found the issuing agency had "engaged in egregious misconduct," id. at 59, it held because the agency had discretion, the plaintiff had no property right in the desired action, and thus failed to state a substantive due process claim.
The court in RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir.), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989), reinforced the Yale Auto Parts approach:
If federal courts are not to become zoning boards of appeals (and not to substitute for state courts in their state law review of local land-use regulatory decisions), the entitlement test of Yale Auto Parts"certainty or a very strong likelihood" of issuancemust be applied with considerable rigor. Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case.... Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest. The "strong likelihood" aspect of Yale Auto Parts comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised.
Because village code conferred wide discretion, there was no property right in the desired permit, id. at 919, and the court dismissed the claim because there was no property interest at stake.[7]
In the present case, the ordinance describing "edge impacts" calls for the exercise of substantial discretion by the City Council in the application of the "edge impact" ordinance. Pursuant to the analysis in the Silver and Yale Auto Parts cases, because the ordinance here required the exercise of discretion, Hayes had no constitutionally cognizable entitlement to the Master Use Permit without the 15-foot length reduction condition. His § 1983 claim fails because he did not have a property interest in the Master Use Permit.
3. Procedural Due Process
Neither the Court of Appeals nor the parties gave any attention to the nature of the *1198 claim in this case. Proper characterization of the challenged action as a violation of either procedural or substantive due process makes a dispositive difference in the analysis and outcome: if the challenged action was a violation of procedural due process, there is no deprivation of a constitutional right if state law provides an adequate postdeprivation remedy. Parratt v. Taylor, 451 U.S. 527, 542, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981).
RCWs 64.40 and 36.70C provide a postdeprivation remedy as extensive as § 1983, with the added benefit that it is easier to state a claim under either RCW 64.40 or 36.70C.[8]
The Court of Appeals revived Hayes's § 1983 claim after the trial court had explicitly refused to consider it. Holding the City Council's action arbitrary and capricious, the Court of Appeals found the City liable under § 1983. Hayes v. City of Seattle, slip op. at 10-11 (Wash.App. Feb. 13, 1995). The court cited Cougar Mountain Assocs. v. King County, 111 Wash.2d 742, 757, 765 P.2d 264 (1988), for the proposition "an agency's decision conditioning a land use permit upon mitigation of expected impacts must be supported by specific determinations of what the impacts are and how the required mitigation conditions will alleviate them." Id. at 11. The Court of Appeals then held a "decision which is not based on such determinations is necessarily arbitrary because it is not based on due consideration of the facts." Id.
This is the Court of Appeals' own conclusion, because we did not say this in Cougar Mountain. The Cougar Mountain Court did exactly what the trial court in this case did: it remanded the agency decision back to the agency for a more complete explication of the reasoning for its decision. There was no holding that an incompletely articulated SEPA decision by an agency equates to a denial of a constitutionally protected right to due process of law. Ultimately, in Cougar Mountain, as the Court of Appeals correctly noted, the trial court "was of the opinion that the Council could legally do what it did and was only concerned with the clarity of the record." Slip op. 8. Clarity of the record is a procedural concern, not a substantive issue.
The Court of Appeals also equated insufficient findings (which might have been remedied on remand) with arbitrary and capricious conduct, holding the absence of support in and of itself was arbitrary "because it is not based on due consideration of the facts." Slip op. at 11. As noted above, the affidavit of Councilmember Street was uncontroverted and to the contrary: the City Council did engage in due consideration of the facts. The failure of an administrative tribunal adequately to support its conclusions was a procedural defect with respect to SEPA, a procedural statute. Save Our Rural Env't v. Snohomish County, 99 Wash.2d 363, 371, 662 P.2d 816 (1983); Cougar Mountain, 111 Wash.2d at 743, 765 P.2d 264 ("the County erred in the procedure by which it denied Cougar Mountain's application ... [by failing] to set forth precisely the significant environmental impacts it considered in denying Cougar Mountain's application.").
*1199 Plainly, the proper characterization of the due process defect the Court of Appeals found here is procedural, not substantive. Pursuant to Parratt, there is no federal cause of action for a violation of procedural due process when state law provides an adequate postdeprivation remedy.

CONCLUSION
The majority's analysis in this case tortures both traditional Washington law on claim preclusion and the definition of the administrative remedy. Moreover, by failing to address the issue, the majority leaves in place the erroneous Court of Appeals analysis of 42 U.S.C. § 1983 and perpetuates Washington's aberrational analysis of that federal tort in land use matters.
The City's conditioning of the Master Use Permit Hayes sought was an appropriate exercise of the City's discretion under the applicable ordinance. While the permissible scope of the ordinance may be debatable, Hayes does not challenge the ordinance itself, only its application to him. He has not been deprived of any constitutionally protected property right, and therefore has no constitutional cause of action. Even if he has been deprived of such a right, the deprivation occurred, if at all, through a denial of procedural due process. Because RCW 64.40 provided Hayes with an adequate postdeprivation remedy, he has no federal cause of action. Because Hayes did not timely assert his state remedy, he lost it.
This case is here now only because Hayes did not like the discretionary decision the City Council reached. There are no great constitutional principles at stake. "Resolving routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts." Gardner v. Baltimore Mayor & City Council, 969 F.2d 63, 67-68 (4th Cir.1992). Nor is it the business of the Washington Supreme Court. We should exercise judicial restraint and allow local land use disputes to be resolved locally in the community intimately affected.
I would reverse the Court of Appeals and remand this case to the trial court with instructions to dismiss it with prejudice.
NOTES
[1] In a memo dated December 7, 1989, a date that preceded the council's action by 11 days, a council staff person informed the council's Land Use and Community Development Committee that Hayes's project "meets or exceeds these Land Use Code regulations." Clerk's Papers at 350. The author of the memo also informed the committee that "[i]t would appear that the applicable City code for Commercial zones did very specifically address the issue of setbacks adjacent to residentially zoned property, and that there is no SEPA authority to require further mitigation in this case." Clerk's Papers at 350.
[2] Although Hayes did not indicate in his complaint what statute he was proceeding under, it is clear from his pleading that his action was a special proceeding maintained pursuant to RCW 7.16 and is properly denominated as a writ of review or certiorari. RCW 7.16.030.
[3] RCW 64.40.020 reads in part:

"(1) Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law....
"(2) The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees."
[4] Under RCW 7.16.120, a complaining landowner is entitled to relief if he or she can establish any one of the five listed standards: (1) lack of subject matter jurisdiction; (2) action in excess of lawful authority; (3) an error of law; (4) lack of an essential element; or (5) factual determinations not supported by substantial evidence. While a court may find on a writ of review that the decision maker's action was so egregious as to be classified as arbitrary and capricious and warrant a grant of relief, such a finding is not required in order for the court to grant relief on a writ of certiorari. Cf. Lutheran Day Care, 119 Wash.2d 91, 829 P.2d 746 (county's action was so egregious as to merit finding of arbitrary and capricious for both writ and damages action).
[5] RCW 64.40.030 reads as follows:

"Any action to assert claims under the provision of this chapter shall be commenced only within thirty days after all administrative remedies have been exhausted."
[6] In reaching our decision, we are not unmindful of the dissent's observation that a member of the council "fully and fairly considered" the Hayes project before the council imposed its restrictions. Dissenting op. at 1187. Although a city council member submitted an affidavit containing that averment, it surfaced only after this lawsuit was commenced. Clerk's Papers at 112-13. Significantly, the facts set forth in that affidavit are not found in the administrative record. Even if such an investigation took place, however, it is difficult to understand how this investigation could have overlooked the memo, submitted to the council by a staff member prior to the date the council took its action, indicating that the project conformed to all of the City's land use regulations. See n. 1.
[7] Although the Court of Appeals affirmed the trial court on the basis of 42 U.S.C. § 1983, the amount of damages Hayes was seeking under that statute was the same as the damages he sought under RCW 64.40. Neither party has argued at any level that the amount of damages would differ based on this alternate theory of liability or that there is a fact question as to the amount of the damages.
[1] The majority insinuates Street's affidavit was not timely offered, surfacing only after the lawsuit was commenced. Majority op. at 1183 n. 5. The affidavit, however, was properly submitted in response to Hayes's motion for summary judgment specifically to dispute declarations that the City Council gave Hayes short shrift. There was no reason for Street's affidavit to "surface" prior to the lawsuit and prior to the accusatory declarations.

The majority also states, "Significantly, the facts set forth in that affidavit are not found in the administrative record." Id. The administrative record before us is sparse. There is no document in that record in which it would have been either appropriate or necessary to publish Councilmember Street's refutation of Hayes's allegations of cavalier treatment.
The majority offers as support for its conclusion the City Council's decision was arbitrary and capricious an excerpt from a staff memorandum, which opined the City lacked SEPA authority to require further mitigation of the Hayes project. Majority op. at 1180 n. 1. The staff member who prepared the memorandum, Mary Denzel, later met with the Council's Land Uses Community Development Committee on December 15, 1989. During that meeting, Councilmember Street discussed Ms. Denzel's memorandum with her and stated his continuing concern that the proposed building needed bulk mitigation. Clerk's Papers at 358-63.
After discussion of the Hayes project and the applicable ordinance, Ms. Denzel changed her mind and agreed with Councilmember Street's interpretation of the ordinances. She seconded his motion to condition issuance of the master use permit on reduction of the length of Hayes's building by 15 feet, and voted with him in favor of the motion. Clerk's Papers at 364. Thus, whatever reservations Ms. Denzel may have expressed in her memorandum, they were laid to rest as a result of her meeting with Councilmember Street on December 15. She did not voice any disagreement with Councilmember Street's conclusion that "while the setback rules do establish clear and specific statutory basis for setback, they do notthey are not definitive to meet with respect to either height or length of buildings and that therefore we believe that there is authority to look at the length of this building and we have done it." Clerk's Papers at 367.
Plainly, Ms. Denzel's memorandum does not, as the majority suggests, establish the City Council acted arbitrarily and capriciously by ignoring her advice. Even if the City Council had acted contrary to her advice, however, that would hardly, in and of itself, constitute arbitrary and capricious decisionmaking. The legal authority of the City to take the action it took is not in dispute; Hayes did not appeal it. Thus, Ms. Denzel's legal conclusion in her memorandum (the record does not reveal if she is a lawyer), that there was no SEPA authority for the City to reduce the length of the building, is both irrelevant here and contradicted by her subsequent acquiescence in the propriety of the length reduction.
[2] "While this court has not held that aesthetic factors alone will support an exercise of the police power, such considerations taken together with other factors can support such action." Polygon Corp. v. City of Seattle, 90 Wash.2d 59, 70, 578 P.2d 1309 (1978). But the ordinance here may arguably confer too much discretion. See, e.g., Burien Bark Supply v. King County, 106 Wash.2d 868, 725 P.2d 994 (1986) ("An ordinance is unconstitutional when it forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application."); Anderson v. City of Issaquah, 70 Wash.App. 64, 82-83, 851 P.2d 744 (1993) (deprivation of due process when design review board can create ad hoc standards during design review process). We need not decide the propriety of the ordinance, however, as Hayes has not challenged it.
[3] The Court of Appeals decided as a policy matter it would not apply the principles of res judicata it had correctly enunciated. Instead, the court erroneously deferred to what it thought were the more important principles governing the three-year statute of limitation for § 1983 claims. Hayes, 76 Wash.App. at 880-81, 888 P.2d 1227. The Court of Appeals' solicitude for § 1983 claims was misplaced, however. The United States Supreme Court held in Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Full Faith and Credit Clause mandates subordination of § 1983 claims to state claim preclusion law. Thus, we must apply Washington claim preclusion law here.
[4] It is not entirely clear why Hayes pleaded his writ suit in these terms. RCW 7.16.040 sets forth the elements required for the issuance of a writ. Because this case involves a challenge to an ordinance promulgated pursuant to SEPA, the clearly erroneous standard of review is mandated. Cougar Mountain Assocs. v. King County, 111 Wash.2d 742, 747-50, 765 P.2d 264 (1988) (adopting clearly erroneous test to evaluate challenge to denial of subdivision application under SEPA); Polygon Corp. v. City of Seattle, 90 Wash.2d 59, 69, 578 P.2d 1309 (1978) (adopting clearly erroneous test to evaluate challenge to denial of building permit under SEPA); Victoria Tower Partnership v. City of Seattle, 59 Wash.App. 592, 596-97, 800 P.2d 380 (1990) (citing Cougar Mountain and Polygon as authority for employing clearly erroneous test to evaluate challenge to denial of project permit under SEPA), review denied, 116 Wash.2d 1012, 807 P.2d 884 (1991). While a decision that is arbitrary and capricious is also clearly erroneous, the proper standard of review for the writ of review in this case is the clearly erroneous standard.
[5] I agree with Justice Scalia that substantive due process is an oxymoron, not a constitutional right. United States v. Carlton, 512 U.S. 26, 39, 114 S.Ct. 2018, 2026, 129 L.Ed.2d 22 (1994) (Scalia, J., concurring). See also Newell v. Brown, 981 F.2d 880, 885 (6th Cir.1992) (substantive due process is a "durable oxymoron"), cert. denied, 510 U.S. 842, 114 S.Ct. 127, 126 L.Ed.2d 91 (1993); Gosnell v. City of Troy, 59 F.3d 654, 657 (7th Cir.1995) (substantive due process is an oxymoron and procedural due process is a redundancy); United States v. Fitzgerald, 724 F.2d 633, 639 (8th Cir.1983) (en banc) (Arnold, J., concurring) (substantive due process is "an oxymoron if ever there was one"), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984); Brower v. Inyo County, 817 F.2d 540, 544 n. 4 (9th Cir.1987) ("It is probably too late to express continuing dismay over the use of the oxymoron `substantive due process.'"), rev'd on other grounds, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).
[6] The federal circuit courts of appeals in land use cases uniformly require some property interest to be at stake before embarking upon a due process analysis. See, e.g., Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir.1995); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir.1991); Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 827 (4th Cir.1995); Shelton v. City of College Station, 780 F.2d 475, 479 (5th Cir.), cert. denied, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566, and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41(1986); Silver v. Franklin Township, 966 F.2d 1031, 1036 (6th Cir.1992); New Burnham Prairie Homes, Inc. v. Village of Burnham, 910 F.2d 1474, 1479 (7th Cir.1990); Ellis v. City of Yankton, 69 F.3d 915, 917 (8th Cir.1995); Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir.1994); Jacobs, Visconsi & Jacobs Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir.1991); Reserve, Ltd. v. Town of Longboat Key, 17 F.3d 1374, 1379 (11th Cir. 1994), cert. denied, 513 U.S. 1080, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995).
[7] A comprehensive listing of other courts employing the entitlement analysis appears at Kenneth B. Bley, Use of the Civil Rights Act to Recover Damages in Land Use Cases, CA34 A.L.I.A.B.A. 381, 389-90 (1995) (citing numerous cases).
[8] The Washington remedy for arbitrary and capricious land use decisions provides a less arduous path to reach the trier of fact. To state a claim under RCW 64.40, one need only be the owner of a property interest. RCW 64.40.010(3) defines property interest as "any interest or right in real property in the state." Thus, a claimant under the Washington statute does not have to establish either a vested right or "legitimate claim of entitlement" (Roth) to the action he or she desires the agency to take, as in a § 1983 claim; he or she need only establish an ownership interest in the affected land. With the passage of the Land Use Petition Act in 1995, RCW 36.70C, it now appears even easier for plaintiffs to redress grievances stemming from actions by local jurisdictions: "In order to grant relief under this chapter, it is not necessary for the court to find that the local jurisdiction engaged in arbitrary and capricious conduct." RCW 36.70C.130(2) (setting forth at subparagraph (1) six disjunctive standards for establishing liability).

"While it is difficult to define an `adequate remedy' in a given situation, this remedy at least should serve the functions of compensating the victim and deterring further arbitrary conduct by government officials." David H. Armistead, Substantive Due Process Limits on Public Officials' Power to Terminate State-Created Property Interests, 29 GA.L.REV. 769, 804 (1995). RCW 64.40 appears to be an adequate state remedy. It provides for damages to the victim, and its attorney fee provision has a deterrent effect.